IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ADAM S. RADEK,

                               Plaintiff,

    v.

SCOTT PARKS, SANDRA LA DU, ASPIRUS
SPECIALISTS, INC., DENISE E. BOEHM,
and CORAL LYNN HUFNAGEL,

                               Defendants,                               OPINION and ORDER

    and                                                                         21-cv-520-jdp

DENISE E. BOEHM,

                               Third-Party Plaintiff,

    v.

JAY KAY MEDICAL STAFFING, INC.,

                               Third-Party Defendant.[1]

---

       Plaintiff Adam S. Radek contends that medical staff at the Marathon County Jail failed to provide him adequate treatment for a gunshot wound, leading to a painful infection that required surgery. Radek is represented by counsel.

       I granted Radek leave to proceed on Fourteenth Amendment individual-capacity claims against defendant nurses Denise E. Boehm and Coral Lynn Hufnagel. I granted Radek leave to proceed on Fourteenth Amendment claims under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978), against defendants Marathon County Sheriff Scott

---

[1] I have amended the caption to reflect the proper spelling of defendants' names as reflected in their submissions.

Parks and Jail Administrator Sandra La Du (who I will call "the county defendants") in their official capacities, and against defendant Aspirus Specialists, Inc., a company that Radek alleged had contracted with the county to provide healthcare services. All four sets of defendants have filed motions for summary judgment. Dkt. 35; Dkt. 41; Dkt. 43; Dkt. 45. I will grant their motions and dismiss the case because Radek fails to present evidence showing that any of the defendants were responsible for his injuries.

## PRELIMINARY MATTERS

**A. Parties' summary judgment submissions**

Radek's response to defendants' motions for summary judgment does not comply with the court's procedures to be followed in briefing summary judgment motions. *See* attachment to the court's preliminary pretrial conference order, Dkt. 24. Radek did not file numbered responses to each of defendants' proposed findings of fact. Nor did he file his own set of proposed findings of fact complying with the court's rules. Included in Radek's brief is a "facts" section containing multiple sets of numbered factual propositions, many of which cite exhibits that he has submitted. But others are purported quotations from defendants' discovery responses, without Radek actually providing the responses themselves as evidence. Defendants raise various objections to Radek's filings, including that many of his exhibits are not properly authenticated.

In turn, Radek has moved to strike portions of defendants' declarations and exhibits submitted in support of their motions for summary judgment. Dkt. 69; Dkt. 71; Dkt. 72. In particular, he objects to various statements by declarants characterizing what their exhibits say, and he objects to various documents submitted as business records that were not authored by

2

the entity producing them.

I will deny both sides' requests to strike the various pieces of evidence to which they object. I could ask the parties to fix the various technical deficiencies with their submissions but there is no need to do so because I do not take either side to be genuinely contesting the authenticity of those exhibits, and my substantive rulings below do not depend on any disputes the parties have about the substantive contents of those documents. In particular, many of Radek's objections are to how defendants characterize the contents of particular exhibits, but any such mischaracterization is immaterial: the records speak for themselves, and because Radek is the party opposing summary judgment, I will draw all reasonable inferences from ambiguities in those documents in his favor.

Nor will I reject Radek's summary judgment submissions even though they fail to comply with this court's procedures. I will consider the informal proposed findings of facts included in his brief and the evidence cited within, but I will not sift through each of his exhibits to find evidence rebutting defendants' assertions. *See* attachment to the court's preliminary pretrial conference order, Dkt. 24, at 3 ("The court will not search the record for evidence."). I caution counsel that she is expected to follow this court's procedures in future proceedings in this or other cases.

**B. Radek's expert witness**

After defendants filed their motions for summary judgment, Radek filed a motion asking the court to appoint an expert witness for him, with Radek's counsel stating that she does not specialize in civil-rights law, did not fully understand how to make expert disclosures, and did not initially think that causation would be an issue in the case. *See* Dkt. 59 and Dkt. 60. I will deny that motion. Federal Rule of Evidence 706 allows a court to appoint a neutral expert

3

when doing so is necessary to help the court or the jury "interpret complex information . . . , not to represent the interests of one party." *DeJesus v. Godinez*, 720 F. App'x 766, 772 (7th Cir. 2017) (citing *Kennedy v. Huibregtse*, 831 F.3d 441, 443 (7th Cir. 2016)). The court will not appoint an expert purely to bolster one side's case.

Radek then included with his summary judgment response an expert report from Suzanne Ward, a nurse who reviewed Radek's medical records and opines that jail medical staff's failure to give Radek appropriate wound care contributed to the harm caused by his infection. Dkt. 74. Three of the four sets of defendants have moved to strike Ward's report as untimely: Radek's expert-disclosure deadline was August 19, 2022; Radek disclosed Ward on January 3, 2023.

Under Federal Rule of Civil Procedure 37(c), when a party fails to make a disclosure as required by Rule 26(a), that party is not allowed to use the undisclosed information unless the failure to disclose was "substantially justified or harmless." If the failure to disclose was not substantially justified or harmless, exclusion is automatic and mandatory. *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004). The following factors are relevant in making this determination: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

I see no reason to think that Radek's failure to disclose expert evidence sooner was in bad faith, but counsel's inexperience with civil litigation is not a justifiable excuse to disregard the rules of civil procedure or the court's explicit deadlines. Allowing Ward's expert report into evidence at this late date would significantly prejudice defendants, who did not make expert

4

disclosures of their own and would need to be given substantial time to do so, conduct additional discovery, and potentially redo summary judgment briefing, all resulting in significant disruption to the schedule. So I will grant defendants' motions and strike Ward's expert report.

## C. Motion to amend complaint

Also after defendants filed their summary judgment motions, Radek filed a motion to amend his complaint to add Wisconsin-law negligence or medical malpractice claims against each of the defendants and to add a new defendant, Jay Kay Medical Staffing, Inc., the company that defendant Boehm alleges employed her to provide staffing for Aspirus Specialists. Dkt. 51.

Although leave to amend should be freely given, Fed. R. Civ. P. 15(a), "district courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008). Radek's request comes too late and is prejudicial to defendants. Radek had known about Jay Kay Medical Staffing's involvement in defendant Boehm's employment for at least nine months before attempting to amend the complaint because Boehm had already filed a third-party complaint naming Jay Kay Medical Staffing as a defendant. Dkt. 25. And his proposed negligence or medical malpractice claims rely on the same core events as his constitutional claims; there is no reason he needed to wait until after defendants filed their summary judgment motions to raise this new legal theory. A long extension of the schedule to accommodate new discovery and dispositive motions would be necessary if I were to grant the motion. His negligence claims are also likely barred by the statute of limitations. Wis. Stat.

§ 893.54(1m) (three-year limitation on "injuries to the person"); § 893.55(1m)(a) (generally, plaintiff must file claim about injury from medical care within three years of injury). So I will deny Radek's motion to amend the complaint and I will proceed to rule on defendants' motions for summary judgment on his Fourteenth Amendment claims.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

Plaintiff Adam Radek was imprisoned at the Marathon County Jail for portions of the times relevant to this case. Defendant Scott Parks was the Marathon County sheriff. Defendant Sandra La Du was the jail administrator. Defendants Denise E. Boehm and Coral Lynn Hufnagel were two of the nurses working at the jail during the relevant times. Radek alleges that the county contracted with defendant Aspirus Specialists, Inc., to provide healthcare services at the jail. Boehm states that she was directly employed by third-party defendant Jay Kay Medical Staffing.

On August 22, 2015, Radek was shot by a police officer. He had a wound to his upper left back into his left chest. He was taken to a hospital in Wausau and treated for his injuries, including a lung contusion, hemopneumothorax, and broken shoulder blade.[2]

On September 1, Radek was discharged to the Marathon County Jail; Radek was detained on a probation hold and as he awaited new charges. A doctor included discharge instructions directing jail officials to change his back gunshot wound dressing twice daily, and

---

[2] Radek was treated at Aspirus Wausau Hospital. No party suggests that the hospital itself is related to defendant Aspirus Specialists, Inc., in any material way.

after 24 hours, change the chest-tube wound dressing daily until drainage subsided. That afternoon, a nurse at the hospital noted that both his back and chest dressings were dry.

On September 2, a certified medical assistant noted that Radek would be seen by a doctor, and that his "[w]ound was repacked," and that they would "[d]iscontinue packing wound." Dkt. 37-4. The doctor's note from that date stated "open wound in back—stop packing, do only gauze over it, NOT in it." Dkt. 37-5, at 2. A note from Nurse Kim that night stated that Radek's back and chest dressings were "falling off." Dkt. 37-6. The nurse applied new dressings and noted that the packing in the back wound was intact.

There are not entries for specific wound-care treatments after September 2. But the county defendants produce a medical record from the jail regarding Radek's wound care. Dkt. 37-7. The document is a form titled "Medication Administration Record" with the word "Medication" crossed off and replaced with "Treatment." The form is a grid with boxes for a nurse's initials every hour. The only reasonable inference from the document is that jail staff repurposed the document to indicate treatment by day instead of by hour: the entries for Radek's wound treatments shows that he received some form of wound treatment under the boxes marked 2, 3, 4, and 7. *Id.* This matches Radek's allegations that he did not receive wound care on September 5 or 6.

Radek also alleges that he did not receive wound care on September 7. At 11:00 that night, a jail nurse sent Radek to the emergency room because his chest wound was swollen and discharging yellow fluid and because he complained of "uncontrolled pain." Dkt. 37-8. I will infer that the nurse's initials on the treatment administration record for the September 7 entry reflects Radek being sent to the ER, not that he received wound dressing changes earlier that day.

7

The next day at the hospital, Radek told the doctor that he had not received dressing changes for at least three days and that he had had a fever for the last few days. Dkt. 2-7. The site of Radek's chest tube had become infected. Radek underwent surgery to drain and clean the site.

Radek states that a staffing schedule provided by Boehm indicates that Boehm was scheduled to work at the jail on September 1, 2, 3, 4, 5, and 7. Hufnagel was scheduled to work at the jail on September 1, 2, 3, 4, 6, and 7.

I will discuss additional facts as they become relevant to the analysis.

## ANALYSIS

### A. Individual-capacity claims

Radek brings individual-capacity constitutional claims against defendant nurses Boehm and Hufnagel for failing to adequately treat his wounds, leading to his painful infection and additional surgery.

As I stated in screening Radek's claims, it is still unclear what legal standard should apply to constitutional claims brought by a prisoner who is incarcerated on a probation hold. The Eighth Amendment governs claims of convicted prisoners, and the Due Process Clause of the Fourteenth Amendment governs claims of pretrial detainees. *See Collins v. Al-Shami*, 851 F.3d 727, 731 (7th Cir. 2017). This distinction matters because, under the Eighth Amendment, convicted prisoners generally need to show that the defendant intentionally harmed them or acted with deliberate indifference toward a risk of harm to them. *Kingsley v. Hendrickson*, 576 U.S. 389, 396–400 (2015). Arrestees and pretrial detainees need not prove the defendant's subjective state of mind to prove a claim; they need show only that the defendant's actions

were objectively unreasonable. *Id.; Miranda v. County of Lake*, 900 F.3d 335, 350–53 (7th Cir. 2018).

The Court of Appeals for the Seventh Circuit hasn't expressly decided yet which of these standards should apply to an inmate on a probation hold. *See Estate of Clark v. Walker*, 865 F.3d 544, 546 n.1 (7th Cir. 2017) (noting issue but declining to decide it); *Palmer v. Marion Cnty.*, 327 F.3d 588, 592–93 (7th Cir. 2003) (same). But in *Smith v. Sangamon Cnty. Sheriff's Dept.*, 715 F.3d 188, 191 (7th Cir. 2013), the court of appeals treated a plaintiff on a parole hold as a pretrial detainee without directly addressing the issue. And this court has assumed in multiple cases that the Due Process Clause governs the claims of a person detained on a probation or parole hold. *See Bennett v. Syed*, No. 20-cv-861-jdp, 2022 WL 1521761, at *5 (W.D. Wis. May 13, 2022); *Voss v. Marathon Cnty.*, No. 18-cv-540, 2021 WL 148732, at *3–4 (W.D. Wis. Jan. 15, 2021). I will follow this approach and apply the Due Process Clause standard.

The law regarding the precise contours of a Fourteenth Amendment medical care claim also remain unsettled. But I have previously concluded that a plaintiff must prove the following elements: (1) he had a serious medical need; (2) defendants made an intentional decision regarding his medical care; (3) defendants' actions were objectively unreasonable; and (4) defendants' actions caused him harm. *Cirves v. Syed*, No. 19-cv-725-jdp, 2022 WL 7458760, at *3 (W.D. Wis. Oct. 13, 2022). I will apply that standard in this case.

The parties do not appear to dispute that Radek's gunshot wound and subsequent condition were serious medical needs. But Radek has not met his burden on the remaining elements because he fails to adduce evidence showing that Boehm and Hufnagel were responsible for his care. Individual liability for constitutional claims brought under 42 U.S.C.

9

§ 1983 requires a defendant's personal involvement in the alleged constitutional deprivation. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017).

The only evidence linking Boehm and Hufnagel to Radek's care is that they were nurses employed at the jail and that discovery responses show that they were scheduled to work at the jail for parts of the time that Radek failed to receive wound care, September 5–7. But there is no evidence explaining whether Boehm and Hufnagel were directly responsible for Radek's care those days. Commonly in this type of case, a plaintiff will submit an affidavit explaining his firsthand experiences or submit medical records indicating which particular medical staffers were directly responsible for treating his medical problems and explaining what they did or did not do to treat him. Plaintiff has not done so here. Instead, he blames nursing staff more generally without directly tying Boehm or Hufnagel to the failure to treat him.

Not every case is bult on direct evidence. But there isn't enough circumstantial evidence to raise a reasonable inference that Boehm and Hufnagel were personally involved in failing to treat him either. For instance, Radek does not explain how many nurses or other medical staffers were present at the jail on the dates in question. As part of her reply, Boehm submits an affidavit stating that she was not aware of Radek's need for wound care during the times in question, there were several other nurses employed at the jail during the times in question, she was responsible for only limited nursing tasks at the jail (to administer medications and assess inmates who had no prior assessment), she wasn't trained in wound care, she was never asked to perform wound care, and that instructions for such care would have been directed to a "charge nurse," a position not held by her or Hufnagel.[3] Radek's mere speculation that Boehm

---

[3] Boehm also states that she was off of work from September 5–7, but that is a dispute of fact that I must resolve in Radek's favor.

and Hufnagel were responsible for treating him is not enough to create a disputed issue of material fact making a trial necessary. *See, e.g., Herzog v. Graphic Packaging Int'l, Inc.*, 742 F.3d 802, 806 (7th Cir. 2014) (While nonmovant "is entitled . . . to all reasonable inferences in her favor, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." (internal quotations omitted)).

Moreover, even if Radek had established that Boehm and Hufnagel had been responsible for his wound care, he does not submit any evidence suggesting that their inaction was the result of an intentional decision as opposed to mere negligence, which is not enough to prove a Fourteenth Amendment claim. *See Miranda*, 900 F.3d at 354 (Fourteenth Amendment claim would fail if "the medical defendants had forgotten that Gomes was in the jail, or mixed up her chart with that of another detainee, or if Dr. Elazegui forgot to take over coverage for Dr. Kim when he went on vacation. Such negligence would be insufficient . . . .").

Courts often observe that summary judgment requires the party with the burden of proof to "put up or shut up," pointing to evidence from which a reasonable jury could find in its favor of each element of its claim. *See, e.g., Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020). Because Radek has failed to present evidence that could lead a jury to conclude that Boehm and Hufnagel violated his constitutional rights, I will grant their motions for summary judgment. I will dismiss Boehm's third-party claims against Jay Kay Medical Staffing as moot.

B. *Monell* **claims**

Radek also brings claims against the county defendants in their official capacities and against defendant Aspirus Specialists, Inc., contending that their policies or customs caused his injuries. I'll start with Radek's official-capacity claims against the county defendants.

11

A municipality may not be held liable under § 1983 for misdeeds of its employees based on a theory of *respondeat superior* or vicarious liability. *Monell*, 436 U.S. at 694. A municipality may be held liable for constitutional violations only if the violations were caused by the municipality itself through its own policy or custom. *Id.* A constitutional claim against a municipal defendant such as the county requires the plaintiff to prove four things: (1) a constitutional deprivation; (2) action or inaction by the municipal defendant that can be fairly described as the defendant's policy; (3) notice to the defendant that its policy would lead to constitutional violations; and (4) a direct causal connection between the defendant's policy and the constitutional injury. *See Bohanon v. City of Indianapolis,* 46 F.4th 669, 675 (7th Cir. 2022); *First Midwest Bank Guardian of Estate of LaPorta v. City of Chicago*, 988 F.3d 978, 986–87 (7th Cir. 2021); *Lapre v. City of Chicago,* 911 F.3d 424, 430–31 (7th Cir. 2018).

The county defendants contend that Radek cannot prove that his infection was caused by medical staff's failure to provide him with adequate wound care, arguing that only expert testimony could make this link. Radek no longer has expert testimony because I have struck Ward's report. But even without Ward's report, I am not convinced that expert testimony would be required to show causation of his injuries. Even if Radek wouldn't be able to show that the lack of wound care itself directly caused the infection, it is reasonable to infer that he would have received treatment for the infection sooner had he been checked as often as directed by the surgeon. In other words, a reasonable jury would not need expert testimony to conclude that some of Radek's pain and injuries were caused by a delay in proper treatment. So I won't grant the county defendants' summary judgment on this argument.

But Radek's *Monell* claim against the county still fails because he doesn't adduce evidence showing that his injuries were caused by county policy. In his complaint, Radek cited

12

a June 2013 report from an "Independent Jail Security Panel" formed after an inmate attacked and injured two correctional officers. Dkt. 2-1. The report stated that the jail "suffers from poor communication, low staff morale, inconsistent training standards, defective or outdated equipment, and an ineffective administration." *Id.* at 2. The panel also stated that "[o]ne of the most troubling aspects of this review is the failure by county government at a number of levels to discuss—and ultimately to address—concerns raised by jail staff, staff surveys, and jail inspectors." *Id.* But the only direct criticism of medical care had to do with delays in provision of or outright denials of medications. The panel recommended, among other things, that the county update jail policies that had not been updated since the 1980s.

In their summary judgment motion, the county defendants stated that the panel's 2013 report spurred a complete overhaul of jail polices that was completed before Radek's stint at the jail. They provide a copy of the overhauled jail medical policies, as well as 2014 and 2015 inspection reports from the Wisconsin Department of Corrections stating that the county has done a satisfactory job addressing concerns raised in previous inspections. Nothing in the panel's 2013 report, the jail's medical policy, or the DOC follow-up inspection reports suggest that there were explicit county policies responsible for Radek's injuries here or that the county was aware of shortcomings in its policies that raised the risk of injuries like Radek's.

In his summary judgment opposition brief, Radek pivots from the 2013 report and adduces other evidence to support his theory that jail customs caused his injuries. Radek submits a declaration from Rachelle Boettcher, a correctional officer at the Marathon County Secure Detention Facility and the jail from 2004 to 2014. Dkt. 75-13. Boettcher states that customarily there was no medical staff at either facility between 11:00 p.m. and 5:30 a.m. She states that "the custom and practice of the [sheriff's department] and [jail] was not to enforce

13

the written policies." *Id.* at 2. She states several examples of problems at the facilities, such as frequent verbal and sexual harassment by supervisors, large cracks in the exterior walls of the jail that would let cold air through, and supervisors' attempts of covering up negative parts of officers' reports or discoveries of the buildings' deficiencies. Specifically regarding medical care, she states that "nurses were there twice a week primarily to review and sign off on paperwork for the booking process," and that replacements were not always found for nurses who called in sick. *Id.*

Radek also submits a declaration from Jennifer Kowalski, a correctional officer at the jail from 2006 to 2015, including Radek's time at the jail. Dkt. 75-12. She states that generally in her time at the jail, there was not a nurse on duty every day. Specifically regarding Radek, she states that "dressings on his wounds needed to be changed and there was not a nurse available to change his dressing so [she] changed the dressings on his wounds." *Id.*

Much of this evidence has limited or no relevance to Radek's claims. Boettcher finished her employment at the jail more than a year before Radek's imprisonment there and before the county overhauled its written policies. And many of the problems at the jail she describes—such as cracks in the walls or verbal and sexual harassment—simply have nothing to do with the specific problem here about Radek's medical needs going unaddressed. Her statement that staff customarily did not follow written practices is far too vague to draw reasonable inferences that the county itself was aware of the risk facing Radek or that his injuries were indeed caused by a county custom.

Both Boettcher and Kowalski noted problems with nurse understaffing. But those statements are still far too vague for a jury to reasonably infer that the county had a custom or practice of understaffing nurses during Radek's stint at the jail. Boettcher didn't work at the

14

jail when Radek was there and almost all of Kowalski's nine years of service came before Radek was there. They do not state whether the county had a policy of nurse understaffing in early September 2015 and Radek does not provide facts showing that this policy was the reason that he failed to have his wounds checked for three days. The most direct evidence in these affidavits is Kowalski's statement that she changed Radek's dressings because no nurse was available. But she doesn't say when or how often this happened, or whether a nurse was temporarily unavailable because the nurse was treating other patients or because there were no nurses at the jail then. Similar to his individual-capacity claims, Radek asks the factfinder to speculate about the details of the jail's customs and how they affected him. That isn't enough to defeat defendants' summary judgment motions.

Radek's briefing is somewhat unfocused, but I take him to be making a final argument: that both the county and Aspirus Specialists are liable under *Monell* because they failed to ensure that there were properly trained nurses at the jail. The parties dispute whether Aspirus Specialists was indeed the corporate entity providing the county with nurses in 2015.

*Monell* applies to private corporations that contract to provide governmental services. *See, e.g., Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 378 (7th Cir. 2017). It is undisputed that before the events of this case, defendant Aspirus Specialists contracted with Marathon County to employ nurses and other medical staff at the jail: they entered into a contract for a term of July 2012 to June 2013. Dkt. 50-1. They executed an addendum extending the contract for another year and providing for automatic renewals each year unless one side terminated the contract. Dkt. 50-2. But Aspirus Specialists states that in December 2013 it assigned its contractual rights and duties to another corporation, Aspirus Clinics, Inc., Dkt. 50-3, and that Aspirus Specialists dissolved as a corporate entity in July 2015, before the events of this case,

15

Dkt. 50-4. Aspirus Specialists contends that it is entitled to summary judgment because it played no role in the events of the case, as Aspirus Clinics was the company providing the jail with nurses by then.

Radek notes that the original contract explicitly stated that neither signing party could assign any of its rights without approval of the other party, and that either party needed to give 90 days' notice before terminating it. *See* Dkt. 50-1, at 3, 5. In August 2015, defendant La Du wrote a letter to Aspirus Specialists expressing the county's intent to terminate the contract after 90 days. Dkt. 75-7. Radek argues that Aspirus Specialists breached the contract by assigning their duties to Aspirus Clinics without getting permission from the county and that the county still believed that Aspirus Specialists was the entity providing medical staff to the jail.

This is a civil rights lawsuit under § 1983, not a breach of contract case, and it is unnecessary for me to consider wither Aspirus Specialists properly assigned its duties to another entity. Even assuming that Aspirus Specialists was still in some way responsible for the nurses working at the jail, the question is whether Radek can sustain a *Monell* claim against Aspirus Specialists or the county.

Radek argues that he can succeed on a *Monell* claim because Aspirus Specialists failed to train its nursing staff as it said that it would do in the original contract: the county agreed to pay an 8 percent "medical oversight services" fee to Aspirus Specialists for recruitment, initial training, and continued supervision and training of the nurses employed at the jail. Dkt. 50-1, at 10. Aspirus largely stonewalled Radek on his discovery requests for training materials, citing various objections such as overbreadth and that it was not an active corporate entity by 2015. Radek believes that Aspirus's failure to turn over any training materials means

16

that they did not have any. Radek didn't file a motion to compel discovery to resolve those conflicts. It is his duty to adduce evidence proving his claims; the parties' unresolved discovery disputes over training materials alone wouldn't be enough to prove that there were no such materials.

Radek also states that defendant Boehm responded to his interrogatories by stating that the supervisor responsible for creating her work schedule was seldom at the jail, she received limited direct training, she was never trained by Aspirus Services, and she "did not have any documentation [of training materials or policies]" other than her staffing schedule. Dkt. 75, at 35–36. It is difficult to determine what reasonable inferences can be drawn from these statements because Radek does not provide a direct copy of Boehm's discovery responses and because Boehm has stated that she was not actually responsible for wound care. But even assuming that Aspirus Specialists was responsible for training nurses at the time of Radek's injuries and did a substandard job of providing that training, Radek still fails to show that either Aspirus Specialists or the county was aware that this created a risk of a constitutional violation like Radek's injuries or that this caused Radek's injuries.

A municipality or corporation acting under color of state law may violate the Constitution by failing to adequately train its employees. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989). But "failure-to-train (or inadequate-training) liability arises when a municipality adheres to a training program 'that they know or should know has failed to prevent tortious conduct by employees,' thereby demonstrating deliberate indifference to this

17

known risk."[4] *Flores v. City of S. Bend*, 997 F.3d 725, 731 (7th Cir. 2021) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397 (1997).

Radek doesn't provide evidence meeting this standard. Plaintiffs can sometimes prove a *Monell* claim by showing that other inmates were injured by a policy or lack of policies, thus alerting the defendant to the risk of harm. *See, e.g., Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 617 (7th Cir. 2022). But Radek provides no such evidence of similar injuries to other inmates. And although a reasonable jury could infer that Radek received inadequate care at the jail, he doesn't present evidence explaining what specific breakdown in the jail's procedures caused this failure, or how inadequate training—as opposed to some other reason like simple negligence or even deliberate conduct by a jail official—was the reason for that failure. A jury would be left to speculate the true cause of Radek's injuries. Ultimately all Radek can show is that he was injured at a jail run by the county and operated by nurses supplied by Aspirus Specialists. But *Monell* does not allow for municipal or corporate liability merely because a plaintiff was mistreated by an employee. So I will grant the county defendants' and Aspirus Specialists' motions for summary judgment.

ORDER

IT IS ORDERED that:

1. Plaintiff Adam S. Radek's motions to strike defendants' declarations, Dkt. 69; Dkt. 71; Dkt. 72, are DENIED.

---

[4] Unlike with individual-capacity claims following *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), the court of appeals continues to apply a "deliberate indifference" standard to *Monell* claims by free citizens or pretrial detainees. *See, e.g., Flores v. City of S. Bend*, 997 F.3d 725, 731 (7th Cir. 2021); *Miranda v. Cnty. of Lake*, 900 F.3d 335, 345 (7th Cir. 2018). So I will apply that standard here.

2. Plaintiff's motion to appoint an expert, Dkt. 59, is DENIED.

3. Defendants' motions to strike the expert report of Suzanne Ward, Dkt. 78; Dkt. 85; Dkt. 87, are GRANTED.

4. Plaintiff's motion to amend the complaint, Dkt. 51, is DENIED.

5. Defendants' motions for summary judgment, Dkt. 35; Dkt. 41; Dkt. 43; Dkt. 45, are GRANTED.

6. Defendant Boehm's third-party claims against defendant Jay Kay Medical Staffing are DISMISSED as moot.

7. The clerk of court is directed to enter judgment accordingly and close the case.

Entered February 22, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge